**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

IN RE: DANIEL S. MINAHAN                   )
     ANITA M. MINAHAN,                )            **CHAPTER 13**
     Debtors.                             )
                               )            **CASE NO. 08-70118**

---

## <u>MEMORANDUM DECISION</u>

The matter before the Court is the requested confirmation of the Debtors' third[1]

Modified Plan, dated June 4, 2008, which came on for its confirmation hearing on July 15, 2008.

Counsel for the Debtors has asked the Court to confirm such Plan despite the Chapter 13

Trustee's Objection to it.  The issues raised by that Objection, as refined by the Trustee's

statements at the confirmation hearing, are (i) the inclusion in such Plan of a provision that

Debtors' counsel will be paid a fee of $1,600 from "pre-confirmation [Plan] payments;" (ii)

whether bankruptcy form B22C contains the correct amount for the Trustee's commission; and

(iii) whether some of the expenses claimed by the Debtors are excessive and whether the Plan

provides a sufficient amount for the benefit of unsecured creditors to satisfy the "projected

disposable income" requirement of 11 U.S.C. § 1325(b) as of "the effective date of the plan."[2]

Because the Modified Plan does not pay enough money for the benefit of unsecured creditors to

---

[1] Debtors' counsel docketed this plan as the Second Amended Plan, however this plan is actually the Debtors' third modified plan:  the original plan dated October 25, 2007 was filed in Tennessee; a second plan dated November 12, 2007 was also filed in Tennessee; followed by two further modified plans filed in this Court – dated February 28, 2008 and June 4, 2008.

[2] The parties agree that in any case the Plan cannot be confirmed until either a proof of claim filed by Wells Fargo as a secured claim, which the Debtors state they dispute, is either objected to and disallowed by the Court or the Plan is modified further to provide for payment of such secured claim, if determined to be valid.  Counsel for the Debtors filed an objection to this proof of claim on August 1, 2008 and set the matter for hearing on September 2, 2008.

satisfy the requirements of 11 U.S.C. § 1325(b) and § 707(b)(2), the Trustee's objection will be

sustained and confirmation of the Modified Plan will be denied.  The Trustee's contention that

form B22C incorrectly states the amount of her commission is also well taken.


### FINDINGS OF FACT

The Debtors filed a bankruptcy petition under chapter 13 of the Bankruptcy Code

in the Bankruptcy Court for the Eastern District of Tennessee on October 31, 2007.  By order of

that Court dated January 24, 2008 the case was transferred to this Court as being the proper

venue for it.[3]  The bankruptcy schedules filed with the petition reflect in Schedule D that they

own a residence valued at $175,000 which is subject to mortgage indebtedness of $146,000 and

on Schedule F that they owe total unsecured creditors' claims of $86,849.  On February 28, 2008

they filed amended Schedules A and D which reduced the indicated value of their residence to

$140,060 and increased the value of the secured debt against it to $150,909.  The Debtors' own

calculations show that their average monthly income exceeds the median household income in

the Commonwealth of Virginia, the state of their residence.  As a part of their bankruptcy

documentation the Debtors were obliged to complete and file Official Form 22C, commonly

referred to as B22C, which among other things contains a Part V for Determination of

Disposable Income Under § 1325(b)(2).  During the course of this case the Debtors have filed

three different versions of Form 22C.  Each of them noted that, based on the calculations

_____

[3] The Debtors were first represented by Charles Parks Pope, Esq. of Johnson City,
Tennessee, but since the transfer of this case to this Court, they have been represented by John E.
Jessee, Esq. of Abingdon, Virginia, who filed a Motion to Allow Substitution of Counsel on
February 1, 2008, which was granted by this Court on February 4, 2008.

2

contained therein, the "applicable commitment period" is 5 years and that "Disposable income is determined under § 1325(b)(3)."[4]  The first of these, dated October 25, 2007, reported Monthly Disposable Income in Part V under § 1325(b)(2) of $2,383.93;[5] the second, dated February 24, 2008, reported such amount to be $1,562.46;[6] and the last one, dated June 4, 2008, reported $763.58[7] as the correct figure,  slightly less than one-third of the initially reported figure.

Part V of B22C is followed by Part VI, which calls for additional living expenses that are claimed to be necessary "for the health and welfare of you and your family and . . . should be an additional deduction from your current monthly income under § 707(b)(2)(A)(ii)(I)."  In the last amended B22C filed with the Court, the Debtors claim in Part VI one item only, a monthly expense of $307 for "Virginia Pre-Paid Education Program."  The Trustee stated on the record at the confirmation hearing that she did not oppose this deduction, so the net balance constituting "disposable income" as determined under § 707 (b)(2)(A)(ii)(I) would be $456.58 based on the figures contained in the last filed B22C.

One of the deductions provided for in the form to arrive at "Disposable income" is the Chapter 13 administration expense.  This is calculated by multiplying the projected average monthly plan payment by the current multiplier provided for the filer's district as

---

[4] These indications flow from the Debtors' status as an above median income level household.

[5] This figure represents the difference between reported combined monthly income of $10,891.00 less claimed total deductions of $8,507.07 from income.

[6] This figure represents the difference between reported combined monthly income of $10,331.99 less claimed total deductions of $8,769.53 from income.

[7] This figure represents the difference between reported combined monthly income of $10,331.99 less claimed total deductions of $9,568.41 from income.

published by the Executive Office of the United States Trustee.  The applicable multiplier for this district was 6.8%[8] as of the date the petition was filed in Tennessee and 6.9% for cases filed after March 17, 2008.  The amounts contained in the most recently filed B22C are $1,500 for the Plan payment and 10% for the compensation rate for an average monthly administrative expense of $150.  However, the monthly plan payment amount proposed in the Modified Plan now before the Court is $1,650 rather than $1,500.  This Court's prescribed form chapter 13 plan provides for a 10% compensation factor to the Trustee.  This 10% figure is the maximum percentage permitted by statute[9] and in fact overstates the compensation actually paid to the Trustee in this district.  For the purpose of B22C calculations, the 6.8% factor which ought to be used for the case administrative expense deduction yields an amount of $112.20 per month rather than the $150 figure used in the current B22C filed with the Court.

The Debtors also have filed four chapter 13 plans in this case.  The Modified Plan dated June 4, 2008 before the Court follows an initial plan dated October 25, 2007, an earlier modified plan dated November 12, 2007 and another modified plan dated February 28, 2008.  The current plan provides that the Debtors will pay $1,650 per month to the Trustee for a period of sixty months for a total sum of $99,000.  From this sum the Trustee, after paying her own compensation, is to make payments, also for sixty months, of $582 per month to Nissan in payment for a 2006 year model Frontier truck and $460 per month to Capital One Auto for a

---

[8] This factor is actually an average of the compensation rates, based on caseload, set by the United States Trustee for the chapter 13 trustees in this district.  The Court has been unable to ascertain the actual commission rate which will be paid in the administration of this case if a confirmed plan is achieved.

[9] 11 U.S.C. § 707(b)(2)(A)(ii)(III).

2003 year model BMW automobile.  In view of the Court's lack of knowledge as to the

Trustee's actual commission rate which will be applicable to this case, it will use the 6.8% figure

posted on the United States Trustee's website for this District as of the filing date, which results

in a monthly payment to the Trustee of $112.20 per month.  Offsetting the Plan payment of

$1,650 per month by the sum of these three amounts ($582 + $460 + $112.20 = $1,154.20)

yields a difference of $495.80 per month available for other proper disbursements from the

bankruptcy estate.  The number of pre-confirmation Plan payments which have been made so far

was not disclosed by the evidence at the confirmation hearing, but 11 U.S.C. § 1326(a) requires

that a chapter 13 debtor begin making payments pursuant to the provisions of the Plan within 30

days after the date of the filing of the plan or the order for relief, whichever is earlier.  The

voluntary filing of the petition effected the issuance of an order for relief[10] so the first payment

was due on November 30, 2007.  If all payments which should have been made to the Trustee

have been made, eight pre-confirmation payments have been made by June 30, 2008.  Based on

the $1,650 monthly Plan payment provided for in the current Plan before the Court, that would

result in a total necessary aggregate payment to the Trustee of $13,300 by June 30.  The Trustee

and counsel for the Debtors, however, have stipulated that the Debtors have actually made

$14,516.80 in total Plan payments thru June 30, an apparent excess of $1,216.80.[11]  Utilizing,

however, the figure of $13,300 for eight payments of $1,650 each as reflecting the Debtors'

obligation to the Trustee thru June 30 should result in a balance of $3,966.40[12] in the Trustee's

---

[10] 11 U.S.C. § 301(b).

[11]  The Debtors also made an additional payment to the Trustee of $1,650 on July 1,
2008.

[12] 8 x $495.80 = $3,966.40.

5

hands from eight pre-confirmation payments of $1,650 each net of the eight adequate protection

payments to each of the secured creditors and the proper compensation payable to the Trustee.

This net balance comfortably exceeds the requested compensation of $1,600 for Debtors'

counsel.

A total of $99,000 is to be paid to the Trustee under the terms of the Plan.  After

deducting from this total the sixty payments due Nissan (a total of $34,920) and the sixty

payments due Capital One (a total of $27,600), there remains a balance for distribution to

administrative expense claimants of the bankruptcy estate and its unsecured creditors of $36,480

during the entire term of the Plan, which is an average of $608 per month for the sixty months of

the Plan's term.  To be consistent with the methodology of B22C, which deducts compensation

to the Trustee to arrive at the figure which must be devoted to unsecured creditors, requires that

the $36,480 balance in the Plan after payments to Nissan and Capital One be likewise reduced by

the Trustee's compensation (6.8% of $99,000 = $6,732), a net balance result of $29,748, which

would be an average of $495.80 per month.[13]  The Plan further provides that the scheduled

payments to Nissan and Capital One Auto will constitute the "adequate protection" payments to

which such creditors are entitled pursuant to 11 U.S.C. § 1326(a)(1)(C).

---

[13] The Court observes that while the unsecured creditors undoubtedly benefit from the
services of the Trustee related to distributions to them and therefore the compensation related
thereto, it is much more problematic to conclude that they benefit in the same manner from those
services related to payments to secured creditors which could have been made directly by the
Debtors, or that the compensation related to the portion of the plan payment allocated to
payments to secured creditors ought to be considered as part of the payment to unsecured
creditors.  Nevertheless, B22C does not make any distinction between compensation to the
Trustee for services for the benefit of secured creditors and those services providing a direct
benefit to unsecured creditors and directs that the applicable administrative expense factor is to
be applied to the total plan payment.  Accordingly, in its analysis this Court has followed the
rationale of B22C.

Although the Debtors have a relatively high income for this area, they represent in their testimony that they have no money left after paying their living expenses.  In their testimony at the confirmation hearing and exhibits offered into evidence at that time, they claim the following average recurring monthly living expenses:  $1,816.02 for food and clothing (Debtors' Exhibit A), $1,202.33 for health care expenses (Debtors' Exhibit B), $427.47 for various telecommunication services (Debtors' Exhibit C), $70.00 for a college savings plan for their granddaughter and $237.00 for a college savings plan for their son (Debtors' Exhibit D).[14] They attribute much of their current financial difficulty to increased household expenses which they incurred as a result of family obligations associated with their daughter's three children when she experienced certain personal problems.  They now have legal custody of one of such children, a daughter aged nine, and they are providing for her in the same manner as they do for their fourteen year old son, who is in high school.  They also have a grown son who does not live at home; the same is true for the grown daughter who is the mother of the nine year old girl of whom the Minahans have legal custody and financial responsibility as a member of their regular household.

Line 1 of the Debtors' Schedule I, filed with the petition, shows monthly gross income of $6,666.00 for Mr. Minahan and $4,225.00 for Mrs. Minahan.  The most recent B22C shows monthly gross income of $6,666.68 for Mr. Minahan and $3,665.31 for Mrs. Minahan. On Form B22C, lines 24A through 29, the Debtors used the national and local standards as

---

[14]  The Trustee stated on the record at the confirmation hearing that she did not challenge these college pre-paid savings plan expenses, being incurred for the benefit of their son and the granddaughter of whom they have custody, as an appropriate deduction in Part VI of B22C as a special expense claimed by the Debtors.  Accordingly, the Court will not make any independent consideration of the matter.

applicable to cases filed after March 17, 2008, while § 707(b)(2)(A)(ii)(I) provides that "[t]he debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards . . . as in effect on the date of the order for relief." Outlined below is a comparison of the figures used on the Debtors' most recent B22C form, as compared with the National and Local Standards in effect both as of the date the petition was filed in this case and for cases filed after March 17, 2008 (the most recent standards published by the IRS as shown on the United States Department of Justice website).

|  | B22C Figures | National Standards (date of filing) | National Standards (current) |
|---|---|---|---|
| Living Expenses[15] | $1,370 | $1,546[16] | $1,370[17] |
| Out of Pocket Health Care Expenses[18] | $57/person | N/A | $57/person |

---

[15] National Standards for Allowable Living Expenses, as published by the IRS, available on the United States Department of Justice website for a household of four.

[16] This figure includes $868 for food, $94 for housekeeping supplies, $302 for apparel and services, $89 for personal care products and services, and $193 for miscellaneous expenses.

[17] This figure includes $752 for food, $74 for housekeeping supplies, $244 for apparel and services, $65 for personal care products and services, and $235 for miscellaneous expenses. The apparent oddity that the IRS Standard for living expenses for 2007 is greater than the standard for 2008 is apparently attributable to the fact that 2007 allowances varied according to income, while 2008 figures do not have levels based on income but purely upon the number of members of the household.

[18] National Standards for Out-of-Pocket Health Care for persons under 65 years as published by the IRS, available on the United States Department of Justice website. Prior to 2008 no Standard allowance for medical expenses had been set.

8

| | | | |
|---|---|---|---|
| Housing & Utilities (non mortgage expenses)[19] | $450 | $395 | $461 |
| Housing & Utilities (mortgage expenses)[20] | $690 | $652 | $690 |
| Transportation (operating expenses)[21] | $402 | $343 | $402 |
| Transportation (ownership expenses)[22] | $489 each car | $471 for 1st car $332 for 2nd car | $489 each car |

The following chart is a comparison of the amounts claimed on the Debtors' most recent B22C for expenses allowed under IRS Standards and the amounts actually allowed under the IRS Standards as of the date of filing.

| | B22C figures | Corrected figures |
|---|---|---|
| Line 24A (food, apparel, etc.) | $1,370.00 | $1,546.00 |
| Line 24B (health care) | 228.00 | 0.00 |
| Line 25A (housing; non-mortgage) | 450.00 | 395.00 |
| Line 25B (housing; mortgage) | 0.00 | 0.00 |

---

[19] IRS Housing and Utilities Standards as published by the IRS, available on the United States Department of Justice website, for non-mortgage expenses for debtors living in Wise County, Virginia.

[20] IRS Housing and Utilities Standards as published by the IRS, available on the United States Department of Justice website, for mortgage expenses for debtors living in Wise County, Virginia.

[21] IRS Local Standards for transportation for the South Census Region for operating costs, available on the United States Department of Justice website.

[22] IRS Local Standards for transportation for the South Census Region for ownership costs, available on the United States Department of Justice website.

9

| | | |
|---|---|---|
| Line 27A (transportation; operation) | 402.00 | 343.00 |
| Line 28 (transportation; ownership - vehicle #1) | 0.00 | 0.00 |
| Line 29 (transportation; ownership - vehicle #2) | 29.00 | 0.00 |
| **TOTAL EXPENSES UNDER IRS STANDARDS** | $2,479.00 | $2,284.00 |

The most current B22C also claimed the following additional deductions as "Other Necessary Expenses" which need to be considered:  $243.99[23] on Line 36 for health care, which is in addition to the $228 amount claimed at Line 24B for the IRS Standard for health care expenses for filings in 2008; $280.00 on Line 37 for telecommunications services; $730.34 on Line 39a  for health insurance; and $446.02 on Line 44 for additional food and clothing expenses.  According to the Debtors' Exhibit B presented at the confirmation hearing, which sets forth medical expenses which they claim to have incurred during the period November 7, 2007 thru February 15, 2008, on average the Debtors spend an additional $336.99 on medical expenses each month that are not reimbursed by health insurance.  The Court has reviewed carefully the Debtors' exhibits and the copies of the Debtors' bank statements which were offered by the Trustee.  It has also evaluated their testimony given at the confirmation hearing. The Court finds that their evidence does not establish the additional expenses to the extent claimed by them.

---

[23]  The first B22C filed by the Debtors listed $0 for additional health care expenses on line 36 and $0 for additional health care insurance on line 39a.  The second B22C claimed $832.37 in additional health care expenses and $0 for health insurance on line 39a.  However, a review of Debtors' Exhibit B admitted into evidence at the hearing on this matter shows that $659.66 was deducted monthly from the male debtor's pay check for health insurance through September 30, 2007.  That amount increased to $730.34 per month from October 15, 2007 through January 31, 2008.

There is no question about the health insurance expense and the amount claimed of $730.34 is allowable in full.  At the hearing the Debtors sought to prove the additional expenses they claimed by offering evidence of the expenses they claimed to have incurred during the post-filing period of November, 2007 thru February, 2008 and asserted that they fairly represented the expenses they were incurring at the time of filing.  Some of the evidence offered, however, cast grave doubt on this assertion.  For example, the medical expenses included orthodontic expenditures for their son and granddaughter.  Included in Exhibit B is a copy of an unsigned truth in lending disclosure for the granddaughter's work.  This disclosure is not dated but the attached cover sheet contains the notation "Braces on Olivia 1/7/08"  and is for a total sum of $1,800, of which $450 was to be paid as the "Initial Fee" and the balance of $1,350 was payable in ten consecutive monthly payments of $135 each on the 25th of each month, commencing February 25, 2008.  There is no similar document which was offered with respect to the son's orthodontic work, but the medical expenses claimed during the month of November, 2007 includes  check # 4614 dated November 29, 2007 in the amount of $770 to Orthodontic Associates for their son's braces, a photocopy of which was included as a part of the Debtors' exhibit.  The Court has no way on the evidence before it to determine whether this payment was the first payment on the son's work, the final one or something in between.  The next largest health care expense, other than health insurance, claimed during this period is for $227.11 on November 7, 2007 by check # 4519, but no photocopy of this check was presented nor any indication of its payee.  A review of the banking records introduced into evidence for the period preceding the filing contains some small health care checks but nothing approaching the level of expense claimed by the Debtors in their exhibit.  Based on the evidence presented the Court finds that to allow the Debtors as of the time of filing the health insurance expense of $730.34

11

clearly being incurred at such time plus $228 from the IRS Standard for a household of four

beginning in 2008 is quite fair to the Debtors as a reasonable allowance for the out-of-pocket

health care expenses they were incurring at the time of filing their petition on October 31, 2007.

The instructions for B22C in effect at the time of the filing in this case state the

following at Line 37 for Other Necessary Expenses: telecommunication services:

> Enter the average   monthly amount that you actually pay for
> telecommunication services other than your basic home telephone
> service – such as cell phones, pagers, call waiting, caller id, special
> long distance, or internet service – to the extent  necessary for your
> health or that of your dependents.  Do not include any amount
> previously deducted.

The evidence, according to the Debtors' Exhibit C, indicates that the Debtors were incurring the

following monthly charges for various telecommunication services at the time of their filing:

$143.43 for cable/satellite, $165.82 for four cell phones and $118.22 for their home phone.  The

Court finds that the Debtors have not established that the cable/satellite expense is "necessary"

for the health and welfare of themselves and their dependents.  Their "basic" telephone expense

is included in the IRS Standard for their general living expenses, presumably in the

"miscellaneous" expense category which in 2007 was $193.  In the Court's experience in

reviewing debtors' budgets and living expenses for debtors in far southwestern Virginia, which

is certainly inclusive of the Debtors' residence, the amount paid by the Minahans for

telecommunication services are quite high, perhaps the largest which the Court has seen.  Based

on that experience the Court finds that $150 per month for such services is a reasonable, indeed

generous, allowance.  It will allocate that sum of $50 to basic telephone expense which ought to

be covered by the IRS general Standard for living expenses and $100 to "Other Necessary

Expense" which is reasonably necessary for the health and welfare of the Debtors' household

members.

The Debtors also claim to spend an average per month of $1,816.02 for food and clothing for their household of four members.  The IRS Standard applicable to them at the time of filing provided $868 for food and $302 for apparel and services, a combined total of $1,170 monthly.  Their financial records indicate that they dine out quite frequently in restaurants at various price levels.  Of course they both work away from Big Stone Gap, the community in which they live, although Mrs. Minahan doesn't work very far from there, and therefore some greater level of dining in restaurants is to be expected.  Nevertheless, the Court finds that the Debtors' evidence, even if their figures are accepted, falls far short of establishing that expenditures for food and apparel exceeding the applicable IRS Standards are "necessary" for their health and welfare and that of their dependents.  The fact that the Debtors may spend at the level they claim, although the Court doesn't find that the evidence establishes even that, doesn't mean that spending at such level is in any reasonable sense "necessary."  Furthermore, even if the Court were inclined to allow an additional deduction for food and clothing, the maximum additional amount that could be awarded in any circumstances, as is pointed out in footnote # 31, *infra,* would be limited to 5% of the IRS Standards, which would mean a maximum of $58.50 per month.

The following chart is a comparison of the amounts claimed on the Debtors' most recent B22C for amounts actually expended on "Other Necessary Expenses" and the amounts actually allowed by the Court, as discussed above.

|  | B22C figures | Figures as allowed |
|---|---|---|
| Line 30 (taxes) | $2,146.06 | $2,146.06 |
| Line 32 (life insurance) | 25.00 | 25.00 |

13

| | | |
|---|---|---|
| Line 36 (health care) | 243.99 | 228.00 |
| Line 37 (telecommunication) | 280.00 | 100.00 |
| **TOTAL "OTHER NECESSARY EXPENSES"** | $2,695.05 | $2499.06 |

The following chart is a comparison of the amounts claimed on the Debtors' most recent B22C for amounts on lines 39 through 45 for "Additional Living Expense Deductions"[24] and the amounts actually allowed by the Court, as previously discussed.

| | B22C figures | Figures as allowed |
|---|---|---|
| Line 39 (health insurance) | $730.34 | $730.34 |
| Line 44 (additional food and clothing) | 446.02 | 0.00 |
| Line 45 (charitable contributions) | 87.00 | 87.00 |
| **Line 46 TOTAL "ADDITIONAL LIVING EXPENSE DEDUCTIONS"[25]** | $1,263.36 | $817.34 |

Adjusting the figures claimed by the Debtors to the appropriate National and Local Standards and allowances as determined by the Court, as shown on the chart below, leaves the Debtors with monthly disposable income of $1,634.69 on line 59 of B22C. After subtracting the $307.00 claimed for the Virginia Pre-paid Education Program, the net balance constituting "disposable income" as determined under § 707(b)(2)(A)(ii)(I) would be $1,327.69.

---

[24]  At the time of filing, the heading on Subpart B was "Additional Expense Deductions under § 707(b)."

[25]  At the time of filing, the caption on line 46 was "Total Additional Expense Deductions under § 707(b)."

|  | Current B22C | Figures as allowed |
|---|---|---|
| Line 11 (Total income) | $10,331.99 | $10,331.99 |
| Line 38 (Total Expenses allowed under IRS standards)(including "other necessary expenses" | $5,174.05 | $4,783.06 |
| Line 46 (Total Additional Expense Deductions) | $1,263.36 | $821.04 |
| Line 51 (Total deductions for Debt Payment) | $3,131.00 | $3,093.20 |
| Line 52 (Total of all deductions from income) | $9,568.41 | $8,697.30 |
| Line 59 (Monthly Disposable Income) | $763.58 | $1,634.69 |
| Line 60 (Additional Expense Claims) | $307.00 | $307.00 |

## CONCLUSIONS OF LAW

This Court has jurisdiction of this proceeding by virtue of the provisions of

28 U.S.C. §§ 1334(a) and 157(a) and the delegation made to this Court by Order from the

District Court on July 24, 1984.  Confirmation is a "core" bankruptcy matter pursuant to

28 U.S.C. § 157(b)(2)(L).  This case was filed on October 31, 2007 and therefore is controlled by

provisions of the Bankruptcy Code as amended by the Bankruptcy Abuse Prevention and

Consumer Protection Act of 2005 ("BAPCPA").

## PAYMENT OF DEBTORS' COUNSEL FROM
## PRE-CONFIRMATION PLAN PAYMENTS

Among various reforms to the Bankruptcy Code introduced by BAPCPA are

several which affect the decision of the issues presented in this case.  More specifically, the Code

now requires that secured creditors in chapter 13 cases be paid pre-confirmation "adequate

protection" payments to protect them against the loss in value of their collateral between the case

filing date and the plan confirmation date.  That obligation is contained in 11 U.S.C. §

1326(a)(1)(C), which provides:

> Unless the court orders otherwise, the debtor shall commence making
> payments not later than 30 days after the date of the filing of the plan
> or the order for relief, whichever is earlier, in the amount . . . that
> provides adequate protection directly to a creditor holding an allowed
> claim secured by personal property to the extent the claim is
> attributable to the purchase of such property by the debtor for that
> portion of the obligation that becomes due after the order for relief,
> reducing the payments under subparagraph (A) by the amount so paid
> and providing the trustee with evidence of such payment, including
> the amount and date of payment.

This Court has established a specific procedure to deal with adequate protection payments in the

context of its required form Chapter 13 Plan in its Standing Order #  9,[26] which states in relevant

part with respect to this case as follows:

> (2) If the debtor's proposed plan so provides, pre-confirmation
> adequate protection payments governed by 11 U.S.C. § 1326(a)(1)(C)
> shall be made by the debtor  to the chapter 13 trustee as part of the
> total payment to the trustee, who shall disburse the amount(s)
> provided for by the plan as pre-confirmation adequate protection
> payment(s) to the applicable creditor holding an allowed claim
> secured by personal property promptly prior to confirmation, unless
> and until the Court, after motion, notice and opportunity for a
> hearing, orders otherwise.

---

[26] This Standing Order has been replaced by Local Rule 4001-2, which simply carries
over the existing language of the Standing Order.

16

The Minahans' Modified Plan presently before the Court provides that the regular monthly

payments provided for in the Plan will constitute the pre-confirmation adequate protection

payments due the secured creditors by virtue of § 1326(a)(1)(C).  From each monthly pre-

confirmation payment of $1,650 made by the Minahans to the Trustee, therefore, there is a pre-

petition obligation, previously noted, of $1,042.00 per month for the vehicle payments.  In

addition each such payment would be subject to an obligation for the Trustee's commission of

$112.20 per month.  As previously noted also, those figures leave a difference from each

monthly payment of $495.80 which is available for other purposes, including payment of

compensation for Debtors' counsel.  11 U.S.C. § 330 (a)(4)(B) provides that the court may allow

reasonable compensation to a chapter 13 debtor's attorney for representing the interests of the

debtor in the case.  Such compensation is an administrative expense of the case pursuant to 11

U.S.C. § 503(a)(2).  Section 1326(a)(1)(C) provides that, unless the court orders otherwise, the

chapter 13 debtor shall pay "adequate protection" payments directly to the entitled creditors,

reducing the plan payment to the Trustee by the corresponding sums so paid and provide proof

to the Trustee of the making of such payments.  The inescapable conclusion is that "adequate

protection" payments "come off the top" and are payable to the secured creditors before payment

of anything else in the case.  This Court has provided a procedure whereby chapter 13 debtors, if

they so choose, may pay the entire plan payment to the Trustee who then pays the adequate

protection payment(s) due to the secured creditors(s) under the term of the plan.  This procedure

was created because of the many practical problems associated with bankruptcy debtors making,

and for the chapter 13 Trustee accounting for, adequate protection payments, which often may be

in a different amount than the regular contract payment, directly to the secured creditors.  In this

case the Minahans did choose to make their adequate protection payments through the office of

17

the chapter 13 Trustee.  Whether the debtor makes the payment directly to the creditor(s) or chooses to do so through the Trustee, however, the priority of such obligation above any other claim against the chapter 13 plan payments must be paramount.  To do otherwise would change the priority scheme devised by Congress for reasons of mere administrative convenience.

11 U.S.C. § 1326(b)(1) provides that "[b]efore or at the time of each payment to creditors under the plan, there shall be paid any unpaid claim of the kind specified in section 507(a)(2) of this title;" which includes the compensation paid to debtor's counsel pursuant to section 330, the priority of which is set by section 507(a)(2).  The next listed charge pursuant to § 1326(b)(2) against the plan payments is the compensation due the standing chapter 13 trustee.  Based on the foregoing, the Court concludes that the Trustee is correct that under BAPCPA the adequate protection payments due to the secured creditors during both the pre-confirmation and post-confirmation stages of the case take precedence over the payment by the Trustee of any compensation payable under the terms of the plan to Debtors' counsel.[27]  Under the

---

[27]  The 2005 Advisory Committee Note to Official Form B22C states:

> The Chapter 13 form does not provide a deduction from disposable income for the Chapter 13 debtor's anticipated attorney fees.  There is no specific statutory allowance for such a deduction, and none appears necessary.  Section 1325(b)(1)(B) requires that disposable income contributed to a Chapter 13 plan be used to pay "unsecured creditors."  A debtor's attorney who has not taken a security interest in the debtor's property is an unsecured creditor who may be paid from disposable income.

In *In re Nething*, 2008 WL 2246072, 2008 Bankr. LEXIS 1771 (Bankr. E.D. Wis. May 30, 2008), Judge McGarity considered whether the term "unsecured creditors" includes a specific priority administrative expense claimant (the debtors' attorney).  The *Nething* court, finding the Kansas bankruptcy court's decision in the case of *In re Puetz*, 370 B.R. 386, 391 (Bankr. D. Kan. 2007) ruling persuasive, agreed that the term "unsecured creditors" is a catchall phrase to address all unsecured creditors, priority and non-priority, not specifically referenced elsewhere and overruled the Trustee's objection to the Debtors' plan.  *Nething*, 2008 WL 2246072, at *4.

circumstances of this particular case, however, there are sufficient excess funds available from

pre-confirmation payments after payment of obligatory adequate protection payments and

applicable compensation to the Trustee to permit the Trustee to pay the entire requested debtor's

attorney's fee of $1,600 in full following confirmation.  Accordingly, under the circumstances of

this particular case, the provision for payment of counsel from pre-confirmation payments but

after plan confirmation is not objectionable.


### REQUIRED DISPOSABLE INCOME PAYABLE
### FOR BENEFIT OF UNSECURED CREDITORS

Prior to the adoption of BAPCPA there was no statutory distinction between the

obligations of higher income and lower income bankruptcy debtors to their creditors in chapter 7

and chapter 13 cases other than the general "substantial abuse" dismissal of a chapter 7 case

pursuant to 11 U.S.C. § 707(b), and the obligation of a chapter 13 debtor, upon the objection of

the trustee or the holder of an unsecured claim, to devote all of the debtor's "disposable income"

to making plan payments for a term of thirty-six months. 11 U.S.C. § 1325(b)(1)(B).  Since the

---

*Contra In re Amato*, 366 B.R. 348 (Bankr. D. N.J. 2007).  In this case, the Trustee has not
questioned generally the payment of compensation to Debtors' counsel from Plan payments, just
the provision in the Plan which would pay such counsel from pre-confirmation payments.
Neither has any creditor made any such objection.  While as a general proposition this Court is
skeptical that an administrative expense claimant is the type of "unsecured creditor"
contemplated by the statute, particularly in light of the express provision in the amended statute
for the chapter 13 Trustee's compensation as an administrative expense, Congress in BAPCPA
has not changed the statutory provision authorizing the payment of compensation to counsel for
the debtor in a chapter 13 case and this Court's mandatory form chapter 13 plan clearly
designates compensation to debtor's counsel as a priority claim for an administrative expense.
Accordingly, the most logical reconciliation of these seemingly inconsistent provisions is to
adopt the reasoning of the Advisory Committee Note and the *Nething* decision and treat the
compensation paid to the debtor's attorney as part of the aggregate distribution to "unsecured
creditors" under the Plan.

19

enactment of BAPCPA, however, the Code now requires an individual or couple having an income exceeding the median income for that state for a household of the same size (not exceeding four in number[28]) to devote his, her or their "projected disposable income"[29] in a chapter 13 plan,[30] if eligible to do so, for the benefit of their unsecured creditors for a term of sixty months, in order to obtain a discharge of their debts. *See* 11 U.S.C. §§ 707(b), 1322(d)(1), 1325(b)(1)(B), (b)(3) and (b)(4).


OFFICIAL  FORM  22C

To establish some structure to the lengthy and complicated statutory provisions for determining "projected disposable income" and the applicable "commitment period" in actual chapter 13 cases, the Judicial Conference of the United States has adopted Official Bankruptcy Form 22C, commonly called B22C. Part I of this form involves a calculation of "current monthly income," as defined in 11 U.S.C. § 101(10A), and states:


All figures must reflect average monthly income received from all

---

[28] For households exceeding four in number, see 11 U.S.C. § 1325(b)(3)(C).

[29] For purposes of 11 U.S.C. § 1325(b), "disposable income" is defined as "current monthly income . . . less amounts reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor, or for a domestic support obligation, that first becomes payable after the date the petition is filed;" and for charitable contributions in an amount not to exceed 15 percent of a debtor's gross income, and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation and operation of the business. The Code, however, does not provide a definition of "projected disposable income."

[30] Such a debtor might also proceed under chapter 11 to propose a plan of reorganization to the vote of his creditors providing for the use of post-filing income for the benefit of his creditors. *See* 11 U.S.C. §§ 707(b)(1) and 1123(a)(8).

sources, derived during the six calendar months prior to filing the bankruptcy case, ending on the last day of the month before the filing.  If the amount of monthly income varied during the six months, you must divide the six-month total by six, and enter the result on the appropriate line.

Debtors having income exceeding their state's median income, which is the case with the Minahans, have their allowable living expenses determined pursuant to "subparagraphs (A) and (B) of section 707(b)(2)."  11 U.S.C. § 1325(b)(3).  In addition they are subject to a required "commitment period" of sixty months.  11 U.S.C. § 1325(b)(4).  Part IV of the form, which is applicable to above median income filers, requires that the filer(s) set forth the permissible deductions from income under Standards set by the Internal Revenue Service.  Part V, relying upon the gross income and deductions from income amounts contained in Parts I and IV, respectively, seeks to define "disposable income" for above median income filers for the purpose of 11 U.S.C. § 1325(b)(2).  Part VI provides the place for listing any additional living expenses claimed to be allowable under § 707 (b)(2)(A)(ii)(1).  The Trustee asserts that the disposable income reported in such form, after giving the Debtors as above median income debtors the benefit of the expense claimed in section VI, establishes the minimum amount which must be devoted under the terms of the plan for the benefit of unsecured creditors.

The Debtors offered evidence at the confirmation hearing attempting to support living expenses exceeding the applicable standards established by the Internal Revenue Service. It is clear, however, from the language of the statute that the allowable living expenses for food,

clothing, transportation and shelter for above median income debtors, with some exceptions,[31] are determined by the IRS allowances irrespective of their actual living expenses. 11 U.S.C. §§ 1325(b)(3) and 707(b)(2)(A)(ii)(I). *See generally, In re Hylton*, 374 B.R. 579, 584 (Bankr. W.D. Va. 2007)(Krumm, C.J.) and *In re Wilson*, 2008 WL 619196, at *14, 2008 Bankr. LEXIS 769, at *51-*53 (Bankr. M.D. N.C. March 30, 2008)(Waldrep, J.), the latter of which contains a comprehensive summary of the reported decisions on this point and other chapter 13 issues involving above median income debtors. Accordingly, the Debtors' evidence at the hearing about their regular living expenses, to the extent that it related to living expenses included within the IRS guideline amounts and not otherwise allowed by § 707(b)(2)(A)(ii), is not relevant to the issue of what portion of their income they have to devote to unsecured claimants under the Plan. These living expenses are determined by the applicable IRS standards as listed on Part IV of form B22C.

On the income side of the ledger, the most recent B22C filed indicates that Mrs. Minahan's monthly income had decreased from $4,225.00 at the time of filing to $3,665.31 at the time of the confirmation hearing. In the absence of any evidence or suggestion from the Trustee or other party in interest that such income in actuality has not declined or has decreased for reasons within the control of Mrs. Minahan, the Court will not presume either to be the case.[32] The Trustee asserts that the determination of the Debtors' applicable income as well as

---

[31] Section § 707(b)(2)(A)(ii)(l)) permits, for example, "an additional allowance for food and clothing of up to 5 percent of the food and clothing categories as specified" in the IRS National Standards "if it is demonstrated that [such additional allowance] is reasonable and necessary."

[32] In the event of any dispute, however, the burden is certainly upon the bankruptcy debtor to prove any diminution in confirmation hearing date income as compared to filing date income. *See Wilson*, 2008 WL 619196, at *14 and cases there cited.

allowable deductions therefrom must be determined as of the filing date.  There is certainly

considerable support for this view.  The very language of Part I of B22C requires that a filer's

income is determined by the historical income of the filer during the six month period preceding

the filing date.  It is from this income that the initial determinations are made as to whether the

filer has income above the state's median income and the filer's applicable "commitment

period."  A number of courts have held that the income so reported, less the applicable

deductions, establishes the filer's obligation for "disposable income" which must be devoted to

the benefit of creditors in a chapter 13 case.  *See, e.g., In re Kagenveama*, 527 F.3d 990, 996 (9th

Cir. 2008); *In re Frederickson*, 375 B.R. 829, 835 (8th Cir. BAP 2007); *In re Alexander*, 344

B.R. 742, 748 (Bankr. E.D. N.C. 2006).  A larger number of courts, however, have held that the

amount determined from B22C is the starting point, not both the starting and ending point, in

determining the correct minimum obligation of a chapter 13 debtor under a confirmable plan.

*See In re Jass,* 340 B.R. 411, 415-16 (Bankr. D. Utah 2006); *In re Gonzalez*, 388 B.R. 292, 304-

06 (Bankr. S.D. Tex. 2008); *and Wilson*, 2008 WL 619196, at *14 and cases cited therein.  *See*

*also In re McPherson*, 350 B.R. 38, 44-45 (Bankr. W.D. Va. 2006).  In the view of the

undersigned judge, the proper resolution of this issue can be obtained by a review of the

statutory language informed by some modicum of legal analysis and logic and even making

recourse to just plain "common sense."  For the reasons which follow, this Court will follow the

line of authority represented by *Jass, Gonzalez* and *Wilson* and impliedly endorsed by Judge

Anderson in *McPherson.*  This Court believes that the key to determining the intent of Congress

is consideration of the meaning of § 1325(b)(1), which requires that certain determinations must

be made as of "the effective date of the plan."[33]


## EFFECTIVE DATE OF PLAN

In a prior opinion, this Court held that the "effective date of the plan," while not specifically defined in the Code, for the purpose of determining the proper valuation of property to be distributed under the plan pursuant to 11 U.S.C § 1325(a)(5), will ordinarily be the date of the final hearing on plan confirmation "because that is the date on which the most currently valid information will be available to the parties and the Court to determine the present value of the payment, payments and/or stream of payments to be made by the Debtor or the Trustee to the creditor in satisfaction of its interest." *In re Allen*, 240 B.R. 231, 237-38 (Bankr. W.D. Va. 1999). This Court will adhere to that decision as to the meaning of "effective date of confirmation" under § 1325(a)(5) and apply it also to § 1325(b)(1). In addition to the virtue of consistency, the Court believes that such an interpretation is supported by sound reasoning. Specifically, if Congress intended that a bankruptcy debtor's income and expenses would be

---

[33] 11 U.S.C. § 1325(b)(1) provides as follows:

If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, **as of the effective date of the plan**--

(A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or

(B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

(emphasis added).

fixed as of the filing date for purposes of § 1325(b), it would have been very simple for it to have

specified "as of the filing date" rather than leave it up to interpretation as to what it had in mind

in selecting the phrase "as of the effective date of the plan." Furthermore, it would be illogical to

assume that a chapter 13 debtor's income and allowable expenses for the entire length of a

chapter 13 plan would be unchangeable irrespective of the debtor's actual financial

circumstances during that period. For example, if a chapter 13 debtor earning an above median

income as of the filing date were to experience a calamitous injury prior to the confirmation

hearing date, or for that matter gain a large increase in compensation prior to such date, it would

make little sense to fix his obligations based on conditions no longer applicable.[34] If the debtor

could no longer be expected reasonably to earn his petition date income, a plan based on such an

assumption would not be feasible and therefore not eligible to be confirmed pursuant to §

1325(a)(6). If, conversely, the debtor's income had materially increased by the time of the

confirmation hearing, it seems doubtful, in light of the apparent general purpose underlying the

adoption of BAPCPA, that Congress intended that such additional income could be retained by

the chapter 13 debtor and not devoted to the payment of his unsecured creditors. Finally, the

provisions of chapter 13 providing for modification of a plan after confirmation (§ 1329) and the

granting of a "hardship" discharge (§ 1328(b)), which continue in the Code post-BAPCPA,

would make little sense if a debtor's income and allowed living expenses were required to be set

based on filing date conditions and never subject to change thereafter. For the foregoing reasons

---

[34] *See, e.g., In re Louviere*, 389 B.R. 502, 509-09 (Bankr. E.D. Tex. 2008)(teacher retired
one month before filing petition, monthly income reduced from $3,915(salary) to $1,907
(retirement annuity)) (plan payment based on new income rather than historical income
confirmed). *Contra In re Greer*, 388 B.R. 889 (Bankr. C.D. Ill. 2008) (post-petition job loss had
no effect on debtor's projected disposable income for above median income debtor).

this Court disagrees with the decision of its learned colleague, Judge Mayer of the Eastern

District of Virginia Bankruptcy Court, expressed in *In re Hoskings,* 2008 WL 2235350, at \*5-\*6,

2008 Bankr. LEXIS 1785 (Bankr. E.D. Va. May 29, 2008), adopting the rationale of *In re

Burmeister*, 378 B.R. 227, 231 (Bankr. N.D. Ill. 2007) that the "effective date of the plan" set

forth in § 1325(b) modifies only "the plan provides" in §1325(b)(1)(B) and not both "the plan

provides" and "disposable income" later in the same section, and chooses to follow the decisions

of Judge Pepper in *In re Van Bodegom Smith*, 383 B.R. 441, 452 (Bankr. E.D. Wisc. 2008) and

Judge Waldrep in the case of *Wilson*, 2008 WL 619196, at \*9,[35] which are consistent with the

conclusion reached here.


### TRUSTEE'S COMPENSATION IN B22C

The Modified Plan proposes a $1,650 per month Plan payment from which will be

paid compensation to the chapter 13 Trustee at the rate of 10% of plan payments.  The amount of

monthly Plan payment recorded on Line 50 of B22C, however, is $1,500, yielding by use of the

10% factor a figure of $150.  As the Trustee notes, this is an inconsistency between the Plan and

B22C.  Applying the correct 6.8% rate specified at the United States Trustee's website to such

amount yields monthly compensation to the Trustee as an administrative expense of $112.20.

Accordingly, for the purpose of B22C, as a result of this error, the amount due monthly to the

Trustee is overstated by $37.80.

---

[35] "The phrase 'effective date of the plan' means the date of confirmation, so if the debtor's 'projected disposable income' is to be determined at confirmation, which is months *after* the petition date, then it is difficult to justify tying that determination to the debtor's income for the six months prior to bankruptcy.  *Pak,* 378 B.R. at 265; *Arsenault,* 370 B.R. at 850; *Riggs,* 359 B.R. at 652; *Hardacre,* 338 B.R. at 723."  *Wilson,* 2008 WL 619196, at \*9.  *See also Gonzalez,* 388 B.R. at 306.

### ADJUSTED B22C FIGURES

Under the Debtors' most recent B22C as filed, their joint income as of the confirmation hearing date was $10,331.99, a figure which the Trustee did not appear to challenge other than making the legal argument that such income had to be determined as of the filing date, a contention which has now been rejected by this Court. The deductions claimed by the Debtors against that income, including the college pre-paid savings plan payments, totaled $9,875.41, a difference of $456.58 average per month. Such deductions must be adjusted as noted in the final portion of the Findings of Fact section of this opinion, the final result of which indicated net projected average monthly disposable income for the Debtors, as of the effective date of the plan and after deducting the college pre-paid savings plan payments, of $1,327.69. The Court may not approve a chapter 13 plan over the objection of the trustee unless it pays all claims in full, which is not applicable in the Minahans' case, or it "provides that all of the debtor's disposable income to be received in the applicable commitment period . . . will be applied to make payments to unsecured creditors under the plan."

Accordingly, in order to be confirmable the Debtors' Plan must provide at least $1,327.69, or such lesser amount as may be necessary to pay their unsecured creditors' claims in full, on the average monthly to their unsecured creditors, including in such category the $1,600 fee to be paid to their attorney. As previously noted, using the 6.8% Trustee compensation factor as directed by the statute, the proposed Plan before the Court, net of the payments to the secured creditors and the Trustee's compensation, is calculated to provide $29,748 to unsecured creditors (including administrative claimants), which averages $495.80 per month for the sixty months of the Plan. Because that amount is less than the Debtors' projected  monthly disposable income of $1,327.69 under B22C, using the revised amounts determined by the Court to be appropriate and

27

justified as explained above, the Trustee's Objection to confirmation must be sustained.

## CONCLUSION

For the reasons stated above, the Court by its separate order will deny confirmation of the Plan dated June 4, 2008, but will grant them until September 15, 2008 to file a modified plan, in default of which this case will be dismissed without further notice or hearing.

This 20th day of August, 2008.

William F. Stone, Jr.
United States Bankruptcy Judge